## Fox v. Lantrip, et al.

(Decided May 2, 1916.)

## Appeal from Hopkins Circuit Court.

1. Officers—Fiscal Courts—Salary of. Officer—Power to ·Change.— Where the salary of a county officer has been fixed before his election the fiscal court cannot change it after his election. But if it has not been fixed before his election, it may be fixed afterwards.

2. Courts—Fiscal 'Courts—Requisites of Order Showing Members Present.—Where the records of the court state that the county judge is present, it is not necessary that they should further mention his name, as, for example, reciting that the county judge, J. W. Wilson, was present.

3. ·Courts—Fiscal Courts—Orders of Must be Read,· Approved and Signed.—Under sections 1842 and 1843 of the Kentucky Statutes it is essential to the validity of orders of the fiscal court that they should be publicly read and signed by the county judge or presiding judge, with the approval of the justices present.

4. Courts—Fiscal Courts—Sufficiency of Record Showing Who Held the Court.—It will be sufficient if the orders show the members who were present at the meeting, as it will be presumed that those present as shown by the order held the court.

5. Courts—Fiscal Courts—Presumption That Record Was Read and Signed With Approval.—If the record shows by whom the court was held, and is signed by the judge or presiding judge, as the case may be, but is silent on the subject of whether the proceedings were publicly read and signed by the judge, with the approval of the justices present, the presumption will be that the statute was observed and these requirements complied with.

6. Courts—Fiscal Courts—Verity of Record ·Cannot be Impeached in Collateral Proceedings.—The records of the fiscal court, fair and regular on their face, cannot be impeached or contradicted or varied by parol evidence in a collateral proceeding.

7. Courts—Fiscal Courts—Effect of Attempt to Change Proceedings of One Meeting at a Later One.—Orders of the fiscal court made at one regular meeting of the court are not affected by a recital in the orders at a subsequent meeting that the orders of the court made at the first meeting were read and approved.

8. **Attorney and Client—Attorney's Fees—Payment Out of Public Fund Collected.**—Citizens who successfully bring suit to recover back public funds wrongfully appropriated should be allowed compensation for their attorneys, payable out of this fund, when it has been collected and paid into the county treasury.

H. F. S. BAILEY for appellant.

C. A. DENNY and MILTON CLARK for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming in part and reversing in part.

This suit was brought by the appellees, taxpayers of Hopkins county, to recover from the appellant $1,840.40 alleged to have been illegally appropriated by the fiscal court of Hopkins county and paid to the appellant for services as county school superintendent for the years 1910, 1911, 1912 and 1913. The lower court gave judgment against the appellant for the full amount claimed, and he appeals.

The correctness of the judgment appealed from depends on the effect of certain orders made by the fiscal court on October 19, 1909, and November 16, 1909. The appellant was elected county school superintendent of Hopkins county at the regular November election in 1909. His term of office of four years commenced on the first Monday in January, 1910, and expired on the first Monday in January, 1914.

The regular order book of the fiscal court shows that the following orders were made on October 19, 1909: "Fiscal court of Hopkins county; regular term; October 19, 1909. The fiscal court of Hopkins county met in regular session on this October 19th, 1909, at the court house in Madisonville, Kentucky, with the following justices of the peace, county judge, county attorney and county court clerk present, viz.: Whitson, Evans, Barnard, Jagoe, Hewlett, Morgan and Lamb, justices of the peace, and Bailey, county attorney, and Mills, county court clerk."

Following this preliminary order showing the convening and organization of the court, there appear orders such as are usually made by fiscal courts, and then comes the following order: "It is ordered by the court that the salary of the superintendent of schools of Hopkins county, Kentucky, for the ensuing term of said office, beginning the first Monday in January, 1910,

be and is fixed at the sum of ten cents for each pupil child in the school census as returned by the trustees to the office of the clerk of the county court." At the conclusion of the orders this appears: "Ordered that court adjourn until November 16, 1909. J. W. Wilson, Judge."

On November 16, 1909, the regular order book of the court shows that the following orders were made: "Fiscal court of Hopkins county; regular adjourned term; 16th day of November, 1909. Hon. J. W. Wilson, P. J. Pursuant to adjournment on October 19, 1909, the Hopkins county fiscal court met at the court house in Madisonville, Kentucky, at ten o'clock a. m., with the Hon. J. W. Wilson presiding, and on roll call the following justices of the peace were present, to-wit: H. B. F. Whitson, John R. Evans, L. H. Hewlett, J. B. Morgan, A. G. Lamb and W. E. Jagoe; justice Sam Barnard being absent. The minutes of the meeting on October 19, 1909, were read, and there being no objection, same stood approved as read." Following this other orders were made, and then this one:

"And it is further ordered by the court that the order entered by this court on the 19th day of October, 1909, fixing the salary of A. J. Fox, superintendent of schools of Hopkins county, for the term beginning the first Monday in January, 1910, be and the same is now set aside and held for naught. It is ordered by the court that the salary of said A. J. Fox, superintendent aforesaid, for the ensuing term beginning on the first Monday in January, 1910, be and the same is fixed at fifteen cents per pupil child listed each year as filed with the county clerk, provided said amount does not exceed in any year $1,500.00, in which event said salary is fixed at $1,500.00 for said year."

It will be observed that the order made in October fixed the salary of the superintendent at ten cents per pupil child, while the November order fixed it at fifteen cents, limiting the salary, however, to fifteen hundred dollars. And it is the difference between ten and fifteen cents per pupil child that the appellees sought in this action to and did recover from the appellant. There is no room for dispute that if the salary of the superintendent was fixed by the fiscal court in October, 1909, before the election of appellant, the fiscal court had no jurisdiction or power to change the salary so fixed in November, 1909, or after his election, by either increas-

ing or diminishing it. This is expressly settled by section 161 of the Constitution, reading: "The compensation of any city, county, town or municipal officer shall not be changed after his election or appointment, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed," and also by repeated decisions of this court.

It has also been settled in numerous opinions that if the compensation of an officer has not been fixed before his election, it may be fixed afterwards. And so if the compensation of appellant was not fixed by the October order, the court had the right to fix it by the order made in November.

It will thus be seen that the case turns on the validity of the order of the fiscal court made in October. On behalf of the superintendent a reversal of the judgment against him is urged upon the ground that this October order was void for these reasons: (1) the records of the court do not show who presided over the fiscal court at its October meeting; (2) the orders of the October meeting were not approved until the November meeting; (3) the orders made at the October meeting were not read, approved or signed at the conclusion of the meeting or until the court met in November; (4) the lower court erred in rejecting parol evidence showing that the orders made at the October meeting were not read, approved or signed at the conclusion of that meeting or until the November meeting of the court.

It will be observed that the orders of the fiscal court made at its October meeting as they appear on its record books show that a meeting of the court was held on October 19, 1909. The convening order recites that the county judge and all of the justices, there being seven, were present. This convening order gives the names of the seven justices who were present, but the name of the county judge is omitted. In view, however, of the fact that the order recites that the county judge was present, we do not think the mere omission of his name in the order is of any moment. The record reciting that he was present sufficiently shows his presence although his name was not entered in the order in connection with those of the justices. In other words, when the order states that the county judge is present, it is not necessary that it should further mention his name,

as, for example, by reciting that the county judge, J. W. Wilson, was present.

Section 1842 of the Kentucky Statutes provides: "Before adjournment the minutes of the proceedings of said court shall be publicly read by the clerk of the court, and corrected, if necessary; and the same shall be signed by the county judge or presiding judge, with the approval of the justices of the peace present when the court was held." And section 1843 reads: "No minute or order of the fiscal court shall be valid until the same be read and signed as aforesaid, nor unless the record shows by whom the court was held.

It will be seen that these sections of the statutes provide that the minutes of the proceedings shall be publicly read by the clerk, and signed by the county judge or presiding judge, with the approval of the justices present, and that no order or minute of the fiscal court shall be valid until the same be read and signed, or unless the record shows by whom the court was held.

The record of the October term shows clearly by whom the court was held and that it was held by the seven justices and the county judge, and it was not essential that the orders should in terms set out that the court was held "by the following justices and the county judge," naming them. It will be sufficient if the order shows, as this order does, the members of the court who were present at the meeting as it will be presumed that those present, as shown by the order, held the court.

Nor do we think it indispensable that the record itself should show by an entry that the minutes of the court were publicly read by the clerk of the court, or that they were signed by the county judge or the presiding judge, with the approval of the justices present. If the record shows by whom the court was held, and is signed by the county judge or presiding judge, as the case may be, but is silent on the subject whether the orders were publicly read by the clerk and signed by the county judge or presiding judge, with the approval of the justices present, the presumption will be that the requirements of the statute were observed and that the orders were signed by the judge at the close of the term. In short, when the record of the fiscal court is fair and regular on its face and shows when and where the court was held and who were present, and this record is

signed by the county judge or presiding judge if the county judge be absent, the presumption arising from the record will be that the proceedings were read by the clerk and signed by the judge with the approval of the justices present: Graham v. Blount, 12 B. Mon., 243; McGuire v. The Justices of Owsley Co., 7 B. M. 340.

On the trial of the case counsel for the superintendent offered to show by parol evidence made by the clerk of the fiscal court these facts: That the orders of the October meeting of the court were written at the time by the clerk in pencil and in memorandum form on a minute book; that the proceedings of the court as entered in this minute book were not publicly read or approved by the justices at the October meeting, or signed at any time by the presiding judge. It was further offered to be shown by this witness that after the October meeting had adjourned he wrote out in full on the order book of the court the memoranda of the orders that were entered by him on the minute book of the court at the time it was held, and that the orders of the October term so written out by him in full on the regular order book of the court were not signed by the county judge or read to or approved by the justices until November 16, 1909, when the court met to hold its November term.

Resting the case on the theory that the proceedings of the court at its October term were not read or approved or signed until the November term, the argument is made that the salary of the superintendent was not fixed until the court met at its November term, or until the record of what was done in October was read, approved and signed at this November term. If this was the fact and it was competent to show it by parol evidence, it would necessarily follow that the salary of the superintendent was not fixed until November 16th, as what was done at the October meeting had no validity or effect until it was read, approved and signed. It would further follow that if the salary of the superintendent was not fixed at ten cents per pupil child until the November meeting of the court, the court having full control over its orders made at this term had the power at this November term, to change the order fixing it at this amount and to increase at this term the compensation of the superintendent.

In view of the fact that the order book of the court shows on its face and by legal presumption that at the October meeting the order fixing the salary of the superintendent was read and approved and signed by the judge and the court adjourned until the November meeting, it will be seen that the real question in the case is the right to contradict this October record by the parol evidence which was offered and rejected by the trial court. If this parol evidence was competent to contradict the record, then the judgment should be reversed with directions to dismiss the petition seeking to recover from the superintendent the excess paid him over that allowed in the October order.

In disposing of this vital question it is important to keep in mind that this. is an attempt to impeach, in a collateral proceeding, the validity of a court record, because the fiscal court is a court of record and can only speak by its records.

Thus viewing the matter we think the ruling of the lower court was correct, as it has frequently been adjudged by this court that Fiscal court records cannot be impeached or contradicted or varied by parol evidence in a collateral proceeding: Handley v. Russell, Hardin 152; Bennett v. Tierney, 78 Ky. 580; Desha's Admrs. v. Harrison County, 141 Ky. 692; Kenton County v. Jameson, 150 Ky. 440; Barnett v. Gilbert, 164 Ky. 564; Hurt v. Morgan County, 166 Ky. 364; Ray v. Woodruff. 168 Ky. 563.

It is further worthy of notice, although not of controlling importance, that the fiscal court, at its meeting in November, recognized that the salary of the superintendent had been fixed at the October term, because it set out in the November order that "it is further ordered by the court that the order entered by this court on the 19th day of October, 1909, fixing the salary of A. J. Fox, superintendent of schools of Hopkins county, for the term beginning the first Monday in January, 1910, be and the same is now set aside and held for naught." So that this November order plainly shows that although the court had fixed the salary of the superintendent in October, and before his election, it was, nevertheless the deliberate purpose of the court to violate the plain provisions of the Constitution heretofore quoted and to disregard the many decisions of this court holding in unmistakable terms that when the salary of an officer has

been fixed before his election it can not, after his election, be either diminished or increased. If the salary was fixed at the October term, as the record shows and as we hold, the order of the fiscal court at its November term undertaking to set this order aside was absolutely void. The court had no jurisdiction whatever at the November term to change the order fixing the salary at the October term, and the recital that it set aside the October term order was of no moment except as indicating the desire and purpose of the court.

It is true that the November order recites that the orders of court made at the October term "were read, and there being no objection to same, stood approved as read," but we attach no importance to this recitation. The October orders of the court as shown by the record were complete when the November term was held and had theretofore been signed by the judge. If, as the record shows, the October orders were regular, and after being entered on the record book, were signed by the county judge and the court adjourned until November, it is clear that the court at the November term could not, by the mere recital that the orders of the October term were read and approved, take from the October orders any part of the effect to which they were entitled as the finished product of the court.

There is another question that should be disposed of. In the lower court the appellees moved the court to allow their attorneys, out of the fund recovered, a fee for their services in recovering this money for the county. This motion was overruled, to which appellees excepted and prayed in the lower court, as they had a right to do on this record, an appeal to this court.

We think the motion should have been sustained and a reasonable attorney fee allowed. It is very commendable that public spirited citizens should endeavor to protect the taxpayers of a county from the efforts of an accomodating fiscal court to make unauthorized and unlawful appropriations of the public funds and to seek to recover the money so illegally disbursed from the persons to whom it was wrongfully paid.

And when, as in this case, the public authorities whose duty it is to bring a suit to recover public funds wrongfully paid out, refuse to do so, and the duty is thus imposed on the citizen in his private capacity, he should be allowed his attorney fees if successful.

Citizens should be encouraged to bring suits like this, and when they have succeeded in covering into the county treasury money for the benefit of the people of the county that would otherwise be lost, it is no more than right and just that they should have these fees. If attorneys' fees could not be allowed in cases like this and a citizen were required to pay out of his own means attorneys' fees expended in collecting, for the benefit of the public, a public fund, there are not many citizens who would care to voluntarily incur this expense. They would rather bear the probably trifling personal loss sustained by the illegal appropriation than subject themselves to the much larger loss that would be incurred in attorney fees.

We, therefore, think that when upon demand the authorities who should bring a suit like this, fail or refuse to do so, and it is brought by private citizens, the court trying the case should, when the suit has been prosecuted to a final conclusion and the fund sought to be recovered has been actually collected, in whole or in part, and paid into the county treasury, make a reasonable allowance to the attorneys and direct the payment of the sum by the fiscal court. But in no case should any allowance be made unless the fund sought to be recovered has been recovered in whole or in part and actually paid into the county treasury, and then the fee allowed should be in proportion to the services rendered as well as the amount recovered, but in no instance exceed the sum actually collected and paid into the treasury. If no money is recovered or paid into the county treasury, then no allowance should be made for attorney fees.

Wherefore, the judgment on the appeal of the superintendent, Fox, is affirmed, and on the appeal of the taxpayers is reversed, with directions to the lower court to allow them a reasonable attorney fee when the fund has been paid into the county treasury.