Catina **BROCKMAN** (Theodore H. Lavit, Real Party in Interest), Appellant,

v.

**COMMONWEALTH** of Kentucky (Hon. Doughlas M. George, Real Party in Interest), Appellee.

No. 2004–CA–000982–MR.

Court of Appeals of Kentucky.

Dec. 9, 2005.

Case Ordered Published by Court of Appeals Feb. 10, 2006.

Daniel T. Taylor III, Louisville, KY, for Appellants.

Gregory D. Stumbo, Attorney General, Raymond F. Debolt, Jr., Assistant Attorney General, Frankfort, KY, for Commonwealth of Kentucky.

No brief filed, for Doughlas M. George.

Before BARBER, BUCKINGHAM, and JOHNSON, Judges.

## OPINION

JOHNSON, Judge.

Theodore H. Lavit, Real Party In Interest, has appealed from an order entered on April 30, 2004, by Judge Doughlas M. George of the Taylor Circuit Court which held Lavit in contempt of court and fined

him $825.00 [1] for his failure to appear in court on November 10, 2003, for the trial of *Commonwealth of Kentucky v. Catina Brockman.* Having concluded that the trial court erred by finding Lavit in indirect criminal contempt of court without allowing him to have a jury trial, we vacate and remand.

Lavit represented Brockman on various criminal charges which were set for a trial to begin in the Taylor Circuit Court at 8:30 a.m. on Monday, November 10, 2003. At 8:35 a.m. on the morning of trial, Dawn Gregory, an attorney in Lavit's office, appeared in court and explained to Judge George that Lavit had called his own office that morning and stated that he was too ill to try Brockman's case. The case was continued, but Judge George stated that someone would have to pay the costs for the jurors and that Lavit should present a doctor's excuse.

On November 25, 2003, Judge George entered an order assessing an $825.00 fee against Lavit. Judge George's order stated that the fee was being assessed as "extraordinary expenses" pursuant to CR [2] 3.02(3) which was applicable to a criminal proceeding pursuant to RCr [3] 13.04. Lavit filed a motion to set aside the trial court's order and asked for a hearing.

The trial court heard Lavit's motion on December 2, 2003, at which time Lavit again advised Judge George, this time in person, that he had been prepared to try Brockman's case on November 10, 2003, but was absent from court only as a result of an illness. He stated that due to his illness he had attempted to contact the judge during the evening of November 9, 2003, and that on the morning of November 10, 2003, he concluded that he could not have effectively represented his client at that time in a three-day criminal trial. He presented Judge George with the requested medical excuse stating he had an "acute illness." No other evidence was presented regarding the reasons for Lavit's absence or to contradict the medical excuse and Lavit's statement that he was in fact ill. Judge George stated that he would reconsider his order assessing the fee.

On March 24, 2004, Judge George entered another order setting a "Show Cause Hearing" for April 20, 2004, for Lavit to "show cause why he should not be assessed the jury fee for the trial which was canceled on November 10, 2003[.]" At the hearing on April 20, 2004, Lavit presented Judge George with a letter from his doctor which set forth the symptoms he presented with on November 10, 2003, and a diagnosis of upper respiratory infection. Judge George asked the Commonwealth's Attorney if he wished to question the doctor further regarding the matter or had any evidence to present. The Commonwealth declined and the hearing concluded. Judge George then entered his order of April 30, 2004, finding Lavit in contempt and assessing the $825.00 jury fee against him.

In this order Judge George indicated that in finding that Lavit was not prepared for trial on November 10, 2003, he "finds the Motion filed on December 4, 2003 (over twenty days after the November 10th trial date) most instructive as to Defense Counsel's preparedness for trial." [4] Additionally, Judge George noted that Lavit had a

---

1. The $825.00 represented the juror's fee paid to 66 jurors that reported for jury duty in Brockman's case.

2. Kentucky Rules of Civil Procedure.

3. Kentucky Rules of Criminal Procedure.

4. The order specifically noted 14 requests from the 13–page motion and also noted "that this list is a brief summary and not exhaustive of the relief sought via this Motion."

208

routine examination previously scheduled with his doctor on November 10, 2003, as well as having a motion scheduled to be heard before the Casey Circuit Court on that date. Based on this evidence, Judge George found Lavit to be in contempt of court and assessed the jury fee. This appeal followed.

■ In its brief, the Commonwealth, on behalf of Judge George, contends that Lavit was not held in contempt of court, but merely assessed "additional costs" in a case requiring "extraordinary services" under CR 3.02(3). We disagree and quote from Judge George's order of April 30, 2004, which specifically stated as follows:

"This Court has *considerable discretion in the use of its contempt powers* and finds the $825 jury fee assessment against Honorable Theodore Lavit *to be necessary due to his lack of respect for this Court*" [emphases added].

Clearly, Judge George assessed the jury fee against Lavit for contempt of court.

■ This Court has previously held that an attorney's failure to appear in court when he has a duty to appear is "treated as *criminal* contempt[ ] with criminal *intent* being an essential element of the offense" [emphases original].[5] Criminal contempt may be either "direct" or "indirect" in nature.[6] A direct contempt occurs while the actor is before the court and is "an affront to the dignity of the court" which may be punished summarily.[7] Indirect criminal contempt, on the other hand, " 'is committed outside the presence of the court and requires a hearing and the presentation of evidence' in order 'to establish a violation of the court's order. It may be punished only in proceedings that comport with due process.' "[8] The absence of an attorney from a scheduled court proceeding constitutes an indirect criminal contempt.[9]

■ When the contempt is criminal in nature, as here, all the elements must be proven beyond a reasonable doubt.[10] "Evidence necessary for a finding of contempt must show willful disobedience toward, or open disrespect for, the rule or order of a court."[11] A party is entitled to a jury trial on the disputed facts related to whether he is guilty of contemptuous conduct if the fine is "serious" rather than "petty", and that determination will be made "within the context of the risk and possible deprivation faced by a particular contemnor."[12] Since Lavit faces a potential fine of $825.00, which is not petty, he is entitled to a jury trial on whether he is guilty of indirect criminal contempt.

■ Lavit argues that the evidence before the trial court was insufficient to support a finding of criminal contempt because there was no evidence showing that he intended to commit a contemptuous act. Rather, he contends that his explanation that his absence was justified due to an illness which prevented him from being able to appear and to effectively represent his client was unrefuted. He further notes that he did not become too ill to appear in court until the day of the trial and that he

5. *Commonwealth v. Pace*, 15 S.W.3d 393, 395 (Ky.App.2000).

6. *Id.; Commonwealth v. Burge*, 947 S.W.2d 805 (Ky.1996).

7. *Burge*, 947 S.W.2d at 808.

8. *Pace*, 15 S.W.3d at 395 (quoting *Burge*, 947 S.W.2d at 808).

9. *Id.*

10. *See Brannon v. Commonwealth*, 162 Ky. 350, 172 S.W. 703 (1915).

11. *Pace*, 15 S.W.3d at 396.

12. *International Association of Firefighters, Local 526, AFL–CIO v. Lexington–Fayette Urban County Government*, 555 S.W.2d 258, 260 (Ky.1977).

contacted his office the morning of the scheduled trial and asked an associate to appear and to advise the trial court of his illness, which she did. Further, when the trial court requested that he provide an excuse from a medical doctor concerning the illness, he did so.

After reviewing the record below, we conclude that whether Lavit's actions were contemptuous turns on various issues of fact. From those disputed facts a jury could make certain findings and reasonable inferences that would support a finding of contempt of court. Some of the issues which are in dispute and which may affect the jury's determination of whether Lavit acted contemptuously include, whether Lavit was prepared to go to trial on November 10, 2003; the purpose of Lavit's call to Judge Weddle on November 9, 2003; and why Lavit attempted to call Judge George on November 9, 2003, if he had intended to try the Brockman case up until he awakened on November 10, 2003.

On remand, Judge George shall be disqualified from presiding over Lavit's contempt proceedings since he may have to provide testimony concerning whether he was available at his home on November 9, 2003, and since he has expressed an opinion concerning the merits of the proceeding.[13] If a jury finds Lavit guilty of indirect criminal contempt, then the new trial judge will exercise his or her discretion in assessing the fine.

For the foregoing reasons, the order of the Taylor Circuit Court is vacated and this matter is remanded for a jury trial before a new trial judge.

ALL CONCUR.

---

**13.** Kentucky Revised Statutes 26A.015(2)(a)    and (d) 4.